# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) 2:21-cr-188 |
| | ) |
| ADRIAN PETTY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

The government moves for reconsideration of this Court's prior order granting Defendant Adrian Petty's motion to transfer this case to the United States District Court for the Western District of New York. ECF 88.

To begin with, the Court appreciates that Judge Lawrence Vilardo transferred this case back to allow the government to file its motion. When the Court issued its initial order transferring the case and its order denying a stay of the transfer, it did not intend to cut off the government's ability to seek reconsideration of the decision to transfer. As the Court noted then, the government was always free to ask the transferee court to return the case to the original jurisdiction to seek reconsideration. ECF 82. And that is precisely what happened here.

That said, now that the Court has had the chance to carefully consider the parties' arguments, the record, and applicable caselaw, the government's motion for reconsideration is **DENIED**.

## LEGAL STANDARD

An order granting a motion to transfer is a non-final interlocutory order. *See McCullough v. Pa. Bd. of Prob. & Parole*, 831 F. App'x 50, 51 (3d Cir. 2020) ("Neither the denial of the transfer motion nor the refusal to recuse constituted a final or immediately appealable decision (citing *United States v. Berkowitz*, 328 F.2d 358, 360 (3d Cir. 1964)). A motion asking for reconsideration of such an order is evaluated just like reconsideration of civil interlocutory orders—*i.e.*, under the standard of Federal

Rule of Civil Procedure 54(b).  *United States v. Suggs*, No. 19-134, 2021 WL 4460024, at *4 (W.D. Pa. Sept. 29, 2021) (Conti, J.).  This means that "the court may permit reconsideration whenever it is consonant with justice to do so," "even if the movant cannot show an intervening change in controlling law, the availability of new evidence that was not available when the court issued the underlying order, or the need to correct a clear error of law or fact to prevent manifest injustice."  *Id.* at *5 (cleaned up).

That said, "the movant must still establish good cause for why the court should revisit its prior decision."  *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) (citation omitted).  That is because, "whether involving a final or interlocutory order, a motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant."  *Id.* (cleaned up).  A motion for reconsideration is not a chance at a "second bite at the apple, or to raise new arguments or evidence that could have been proffered prior to the issuance of the order in question."  *Id.* (cleaned up).

## DISCUSSION & ANALYSIS

The government argues that the Court failed to properly apply the legal standard for a motion to transfer venue for three reasons, none of which justify reconsideration.  ECF 88.

First, the government argues that the Court improperly "permitted Mr. Petty to rely upon mere averments to support his request to transfer the case from the WDPA to the WDNY."  ECF 88, p. 10.  Put differently, according to the government, the Court incorrectly "held that a defendant does not have to produce 'affidavits, depositions, stipulations or other documents tending to establish the necessary elements for a transfer' because 'such demanding evidence is [not] required here,

especially since the key facts leading to the Court's decision to transfer the case are not in dispute." *Id.* (quoting ECF 77, p. 2, n.2).

As the government concedes, the Court already addressed this exact argument in its original decision. *See* ECF 77, p. 2, n.2. So, essentially, the government is just asking the Court to "rethink a decision it, rightly or wrongly, already made." *Suggs*, 2021 WL 4460024, at *4 (citations omitted)). That is not an appropriate basis for reconsideration." *Qazizadeh*, 214 F. Supp. 3d at 295. But putting that aside, on the merits, the government's argument misses the mark.

The government continues to point to *In re U.S.*, 273 F.3d 380 (3d Cir. 2001) in support of its position that Mr. Petty was "required" to support his motion with "affidavits, depositions, stipulations, or other documents." ECF 88, p. 11. But that case, which was decided in a completely different context, says nothing of the sort.

There, the Third Circuit was reviewing the district court's "one-line order" to transfer the case "before the government received a copy of the motion, without waiting for the government's response[.]" *In re U.S.*, 273 F.3d at 389. That order problematically "gave no reasons for the transfer." *Id.* In issuing a writ of mandamus, the Third Circuit was concerned about providing the "party objecting to transfer" an "opportunity to rebut the arguments and the evidence, if any, offered by the movant in favor of transfer." *Id.* at 387. But "[m]ost important is [that] the district court's explanation for the transfer demonstrate that the court recognized the nature of the showing that must be made to support a transfer and the parties' respective burdens." *Id.* To do so, the district court should make clear its application of the factors enumerated in *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240 (1964). *Id.*

There was nothing in district court's orders in *In re U.S.* to alleviate a concern that it had failed to properly require the defendant "to bear the burden of establishing that transfer was appropriate[.]" *Id.* at 389. In reaching its decision, however, the

- 3 -

Third Circuit stated that this burden does not require the defendant to show "truly compelling circumstances," nor does it require any specific compilation of evidence. *Id.* at 388.

By contrast, in its order, this Court gave the government full opportunity to be heard, clearly applied the *Platt* factors and noted that the burden was on Mr. Petty to justify transferring the case. ECF 77. Based on the Court's analysis of those factors, and the ample support in the record, the Court determined that transfer was appropriate. *Id.* Indeed, the main drivers of that decision—the location of Mr. Petty and his alleged victim—were and remain undisputed by the parties. Given there has been no material change in the relevant circumstances, the Court sees no reason to reconsider its prior decision on this basis.

Second, the government argues that "[t]here were not facts set forth on the record which support the Court's understanding of how cases are 'oriented' for federal investigations and prosecutions." ECF 88, p. 15. In support, the government points out that "it would have been impractical for special agents from FBI-Buffalo to conduct a sex trafficking investigation in the WDPA for conduct occurring in the WDPA." *Id.* "Consequently, FBI Pittsburgh coordinated with undersigned counsel, the human trafficking prosecutions coordinator for the WDPA, such that the USAO WDPA ultimately sought a grand jury indictment in the WDPA. There is nothing unusual about that decision." *Id.* at p. 16. As for the Court's conclusion that the government was the "cheapest cost avoider," the government retorts that, in fact, "Mr. Petty was the real 'cheapest cost avoider,' because he could have either committed his crimes closer to his home in Buffalo—better yet—not committed his crimes at all." *Id.*

Contrary to the government's suggestion, it is a bit unusual to prosecute a criminal defendant in the Western District of Pennsylvania rather than the district where both the defendant and alleged victim reside. ECF 76, pp. 3-9 (collecting cases). But beyond that, the government already made these arguments to the Court,

and the Court rejected them.  ECF 73, 24:2-26:12, 39:25-24; ECF 75, pp. 17-20. Nothing has changed.

Moreover, even if the government were right in its view of how prosecutions are typically conducted and who here, in fact, was the cheapest cost avoider, it still doesn't change the fact that both the defendant and victim reside in the Western District of New York.  This consideration remains the main factor in the Court's consideration of the most convenient venue.

Third, the government argues that key disputed facts that the Court relied on were not part of the record.  ECF 88, p. 16.  Specifically, the government contends that "continuing this case in the WDPA will not jeopardize the Minor Victim's right to attend court proceedings." *Id.* at p. 20. That's because "the USAO WDPA will enable (and pay for) the victim's attendance at court sessions in-person even if she is not a witness, should she wish to attend." *Id.* at p. 16. "Moreover, the United States has further confirmed with the Minor Victim her position on the issue—that is, the Minor Victim does ***not*** want the case to proceed in the WDNY and prefers that it stay in the WDPA." *Id.* at p. 21 (emphasis in original).  According to the government, transferring the case "places the case, the trial and all publicity in the WDNY, raising unwanted attention, in [the alleged victim's] own backyard, to a highly traumatic event." *Id.*

Again, the government already made the argument that it could provide financial and logistical assistance to the victim for her to attend the trial. ECF 73, 27:11-28:21.  But that doesn't change the fact that it would be ***harder*** for her to do so if the case proceeds in Pittsburgh rather than Buffalo.  As for offering the victim's perspective, now, several months after the motion to transfer was decided, it is simply too late. *See United States v. Jasin*, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003) ("[M]otions for reconsideration should not be used to put forward additional arguments which the movant, in this case the government, could have made but

neglected to make before the judgment." (cleaned up)). While the Court is sympathetic to the victim's perspective, it was incumbent on the government to seek out and present that perspective much earlier.[1] After all, it is no secret that such a consideration would be central to the ultimate decision about where the case should proceed. Fed. R. Crim. P. 21(b), Advisory Committee Notes.

## CONCLUSION

**AND NOW**, this 17th day of August, 2022, the government's motion for reconsideration (ECF 88) is **DENIED**, for the reasons set forth above. This matter is transferred **FORTHWITH** to the United States District Court for the Western District of New York for all further proceedings. The Court already delayed transfer of the case to consider the government's motion for reconsideration, and will not do so again for the purpose of any immediate appeal. That is, the Court cannot further delay transfer, particularly because this case has been pending long enough, the Court does not believe there to be a strong likelihood for success by the government on mandamus review, and any other issues related to the transfer can be litigated on appeal after transfer to the United States Court of Appeals for the Second Circuit. Upon transfer, the Clerk of Court shall mark this case as closed.

BY THE COURT

/s/ J. Nicholas Ranjan
United States District Judge

---

[1] Indeed, there was more than enough time to obtain the victim's position before the Court ruled the first time. At the oral argument on the motion to transfer on March 3, 2022, the Court expressly inquired of the victim's position. ECF 73, 26:13-15 ("I don't know if the government has been in touch with the victim or the victim's family or has a sense as to the victim's position on this motion."). Then, the Court allowed the parties significant time to submit supplemental post-hearing briefs (just over two weeks after the oral argument), where the victim's position could have been put forward. ECF 72.